And we'll move to the third and final case of the morning, which is 21-10772 Brady v. Mrs. Carnival Corporation. We have Mr. Eaton here for Ms. Brady, Mr. Silverman here for Carnival, Mr. Eaton whenever you're ready, no hurry, but whenever you're ready, you can fire away. Good morning. It pleases the court. I'm Douglas Eaton on behalf of Mary Brady. I want to start with an admission that was made by Carnival in their answer brief where they stated that the evidence demonstrates that Carnival was aware that the deck could become slippery when wet. That's notice right there, and that means summary judgment was improvidently granted in this case. Now, the court asked for supplemental briefing on the issue of whether the risk-creating condition in this case was too narrowly defined by the district court. And the risk-creating condition that the district court defined was a particular puddle at a particular time and a particular spot on the deck. And that is not what the Carroll would have been decided differently. Because Carroll dealt with the practice of passengers moving deck chairs, lounge chairs into a narrow hallway and creating a tripping hazard. There was no requirement in Carroll that the plaintiff demonstrate that the defendant in that case was on notice of the particular lounge chair that she had tripped on. Only that they had taken precautions to prevent lounge chairs from being in that narrow space. So to apply the standard in the manner the district court did would eliminate an entire line of cases that deal with risk-creating conditions that occur with such regularity that they are reasonably foreseeable. So, let's talk about the evidence in this case. And I'm not sure where I started at. I thought I started at 10 minutes, but I'm at 9.30. You started at 11. Okay. Yeah, because I think, okay, I guess I requested four minutes instead of five. All right. We'll be flexible. No problem. So, the statement made in their interrogatory answers was that it was reasonably expected that the pool deck was reasonably expected to become wet due to passenger use of the swimming pool. That's, again, an admission of notice of this regularly occurring condition. They indicated that cones were in place. So, that was not a disputed item. What was in dispute is whether or not they were adequately placed so that the people could see them and whether the warning was sufficient or not. But there was a cone available that was seen in the photo. So, the actual placement of one, the existence of a cone on the deck, was essentially undisputed. The incident report said that it was pool water that she, that the plaintiff tripped on, slipped on, excuse me. And the incident report also stated that there was a warning sign in place. So, there is no question as to the cause of this water on the pool deck. The appellee argued in their brief that, oh, we don't know what the water was. That's not true. There's only one indication from the evidence from Carnival itself that it was pool water. So, and even if there was the possibility that there was some other cause for it, all reasonable inferences must be made in favor of the plaintiff at summary judgment. Can I ask you just a quick question about that? Why is the flip side of that not sort of like, come on, this was a pool deck? Sort of openness and obviousness, I guess, to your client. Right. So, open and obvious is a defense, but only to failure to warn, not to failure to maintain claim. And the plaintiff had both claims in this case. An open and obvious defense, which I did address in my brief, is typically a jury question. And if we look at the plot case, 11th Circuit case, which is basically right on point in that case, the question is, the water was clear there. They testified that they did not see it. And so the court said, we can't say that a reasonable person would necessarily have seen this. And also it is made clear in this court's jurisprudence on open and obvious, that it's not just the appreciation of the condition itself, but the dangerousness of the condition. So you may be able to see water, but not recognize that that water is making it unreasonably slippery or slippery, such that you might fall in it. So again, that becomes a jury question as to whether or not it's open and obvious, and how to reach that question. And so we believe that that should be a fact question and that should get reached by the jury. In addition to that, the fact that there is a warning sign in place, the adequacy of that warning is also typically a jury question. Was it placed in a place where someone could see it? In this case, we have testimony that neither the plaintiff or the eyewitness to the fall saw it. We also have a piece of evidence that assists with the open and obvious finding, which is that the eyewitness saw someone else slip in the same area about 10 minutes prior to the plaintiff falling in this case, which suggests that that's two people slipping on it, suggests that it's not necessarily an open and obvious. It at least creates a fact question on the issue. So I'm getting through this faster than I expected. I did want to address some of the issues raised in the answer brief regarding the evidence in this case. The testimony of the eyewitness, they pointed to that and said that, well, if she could see it, then obviously the plaintiff could see it. But the eyewitness testified specifically, and this was omitted from the answer brief, that she only saw the water after the fall. That's when it was brought to her attention, after somebody fell in it. So again, it was not, that's not evidence that it was open and obvious. That's evidence that it was not open and obvious. And I want to address a couple of arguments that were raised in the answer brief suggesting that there needed to be, that there was some kind of unreasonably slippery standard that's out there. The language that was used for that and repeated ad infinitum throughout the brief was taken from a district court case. It was dicta in that case. It was citing to a . . . Can you hang on just a sec? Sure. Stephanie, can we see what's going on with the . . . and let's stop the time if you don't mind. It's okay. I think we're at 4.51. I happen to see it. Okay, we're back. We're good. Yep. Just move it to 5. Yeah, there we go. Good enough. Thank you. The . . . I lost my train of thought here. Sorry about that. It was cited to a district court case called Frasca, which this court reversed. So there is no standard that you must establish that it's unreasonably slippery. The dangerous condition is slippery. And all of the court's jurisprudence on that issue holds to that effect. And the only issue in each of those cases, and I went through those specifically, was on notice and whether or not the warnings that were given by the various cruise lines that this area can become slippery, the placement of warning cones, were sufficient in and of themselves, absent any expert testimony as to the nature of the area, to create a question of fact that would preclude summary judgment. I want to address the repeated efforts to suggest that the cones was in place for crowd control. That was again stated in the answer brief on numerous occasions. There is no evidence in the record to that effect. None. All the evidence in the record links the placement of the cone to the fact that the pool deck could become slippery. And it was warning people that the pool deck can be slippery. So that's just simply not in the record. So, I'm going to go ahead and move on to the next item. I'm going to go to the next item. I did want to end back where I began, which is the Carroll case and the court's question as to how the risk-creating condition is defined. If we start applying the standard that the district court applied here, that you have to have actual notice or constructive notice of a particular item of a regular occurring condition, then you're going to eliminate this entire line of cases that address constructive notice when you have a regular occurring condition that leads to foreseeability. Can I ask you a question about remedy? If we agree with you that under Carroll, the district court framed the risk-creating condition too narrowly, should we just bust it and send it back for a re-application under the right standard? I think a complete reversal in saying that the factual record here is sufficient under Sorrells, under Nathans, and under Frasca to defeat summary judgment is the remedy. Not to ask the court to revisit it, because this is a de novo review. You get to look at the record in its entirety, and indeed, you get to address the open and obvious question that the district court did not even reach. So I don't think... You don't have to, but don't have to. I guess I'm just thinking it's a matter of prudence. Exactly. But the point being is that I think it's a waste of judicial resources to send it back and say, okay, apply a different standard. And then perhaps the court says, okay, fine, I still find summary judgment, and we're back up here again. I think the court should look at the record and say, we're going to apply these cases to this, Sorrells and Frasca, and say, yes, this is sufficient because it's not distinguishable. You have these warnings in place. You have admitted knowledge that this is an area that can become wet. And so therefore, that puts them on constructive notice. Okay. Very well. And I'll just reserve the rest of my time. Okay. Great. Thank you so much. Mr. Silverman, you've got 15 minutes. And if you don't mind, just somewhere early in your presentation, can we go ahead and get to Carol? Yeah, I'm curious about it. Well, let me start with good afternoon. Noah Silverman on behalf of Carnival Corporation. Yes, we can address Carol, and counsel misconstrues Carol, because what he's trying to say is it's not the specific huddle or the specific chair. It's whatever occurs with regularity. It's not whatever occurs with regularity. It is whatever risk curating condition that the defendant knew about that occurs with regularity. And what Carol did here is what the district court did in our case. It circumscribed a specific risk-creating condition. In Carol, the issue was in a particular section of the deck, the pool chairs were being pushed into the aisleway there, and that was the specific risk-creating condition. The court did not say, well, anytime anybody trips on a pool chair anywhere on the deck or a chair anywhere on the ship, that creates notice of a condition that you can trip on a pool chair. True, but don't you think the district court here, you know, maybe sort of over-rotated, and at three different points in the order it asked whether Carnival had notice of the huddle on which Brady slipped. Not like, oh, this is a pool deck, there might be puddles, or this is an area of the bar, there might be spilled drinks or whatever, but like the very puddle. Don't you think, I mean, isn't that different from what's going on in Carol? I don't think it's different, Your Honor, because what the court, the district court did here was look at what the allegations were as framed by the pleadings, and the complaint merely just says Carnival failed to warn of this puddle, and they failed to clean it up. Those are the only two issues in the case. So the court looked to this puddle, and the court had nothing else to look at. There's not a scintilla of record evidence that there were puddles anywhere else on the ship at that point. There's not a scintilla of evidence as to what type of liquid was on here. There's not a scintilla of evidence that Carnival ever knew that a puddle on the deck represented a risk-creating condition to its passengers. That's what's missing here, and the court noted there's no evidence of prior incidents. There's also no evidence of complaints in this case. There's no internal documents stating that there's an issue with the deck or that we have any issue with the deck, and that comes back to the sign, but the testimony is very clear in this case, and there was only one witness from Carnival who testified, which was the adjuster from Carnival. Not a single crew member was deposed. A corporate rep wasn't deposed. It's just Mr. Maurice Vega, who was the adjuster in this case, and when asked why the signs were on the deck, okay, Mr. Vega said, we have cones in various places on the deck, just an additional reminder to guests to proceed with caution. All of the cases that were before this court... Let me stop you, if I can, Mr. Silverman, at that. Yes, your honor. Why do you suppose Carnival put these warning cones by the pool in the middle when it did? I understand there's a dispute of fact about whether that, in fact, happened or didn't, but one thing is crystal clear. Carnival, from the beginning, has taken the position that it put up these warning cones at the pool, in the middle, near where the puddle occurred. Why did they do that? If it wasn't reasonably foreseeable to them that the risk of water and falling or slipping was apparent, why would they put that up there? Well, first of all, factually, your honor, the evidence in this case from the plaintiff herself is that she wasn't near the pool at the time she fell. There is no evidence in the case that there's a cone that specifically to address slipping and falling, as opposed to the myriad of other issues that the sign is there to caution in a general sense, which is... Let me ask the question this way, if I could. I looked at the record. Specifically, I looked at three or four things. One was the question was asked, please state why you think the incident happened. Answer, the alleged accident was apparently wet. The accident area was wet, apparently due to the proximity of the pool and some passengers coming out of the pool with wet soaking clothes. However, caution sign was in place. Second, when Vega was questioned, he was asked about the yellow caution cones in place in the midship area. I just want to clarify with respect to response, it's carnival's position, correct, that there was a yellow caution cone in place on the midship pool area. Correct. That is correct. Normally, we have cones in different areas of the deck for precautionary purposes. I just questioned. I just wanted to be clear whether... I wasn't certain if you were clear as to whether Mr. Press' question was at the place where the plaintiff claimed she fell or just in the midship pool area. Answer, yeah, we have cones in the area. And then in the answer to the interrogatories, the answer was given, question, state the facts upon which you rely for the affirmative defense set forth. Here, if the plaintiff fell, answer, she fell due to a wet deck. And then you say, although wet conditions on the open legal area are open and obvious to passengers, including plaintiff, yellow caution cones were in place on the midship pool area. I guess what I'm trying to get at is, did she fall in the midship pool area? And if the answer is yes, and that that's where the cones were put up, why wasn't that evidence that the owner had taken corrective action and therefore evidence that they knew or had reasonable to know about a dangerous condition? There were a couple of questions there, Your Honor. The first is you asked about the report to the Coast Guard, which is first of all hearsay, but also predicated on what the passenger is reporting to whoever the security officer is at any given time. There's no evidence in the case that they came to a conclusion that what was on the ground was water, that it came from a pool, that they saw it on CCTV video. There was none of that in this case. And that's part of the problem with this case is the whole lack of evidence with respect to notice. With respect to the midship pool area is essentially a third of the deck. It doesn't necessarily sit right next to the pool. There's an eating area. It's right next to the buffet. Again, they haven't established as to why Carnival placed the signs out there, okay? They want to speculate and assume that, and that's exactly what this court has found is not sufficient. This court has required more in every instance. The case is cited by counsel Sorrell's. There was testimony from the crew that they put the warning signs down because of the rain. They knew it was slippery. In Frasca, there was a video that specifically warned passengers that the deck became wet from salt splay and could be very slippery. In Nathan's versus Carnival, there was a newsletter. None of that evidence is present in this case. There is no evidence as to why the sign was placed here, okay? There's not a single piece of testimony from a crew member saying, and we've identified the crew members who would be responsible for the pool and deck area in discovery. No deposition was taken. There's absolutely no evidence that the sign was placed there because they either knew of this wet spot, because it wasn't anywhere near this wet spot, or that they knew that there was a general concern that this particular deck not just became wet, but became unreasonably slippery when wet, and that created a danger for the passengers. It's not notice of a condition. It's not notice of a chair. It's not notice of water. It's notice that it presents a danger to the passengers, and that is entirely what is missing from this case. I guess that's the question I want you to help me with. These yellow cones were not spread out over the entire deck. These yellow cones were by the pool. What inference can a jury reasonably draw from the fact that Carnival chose to put those cones by the pool in the midship area? Well, the testimony in this case is not specific to the midship area. Mr. Vega actually testified, and this is standard practice on most decks on a cruise ship, that we have cones in various places on the deck. Just as an additional reminder to the guests to proceed with caution. Why, though, do you want to alert your passengers to the additional risk at that particular spot? It's not at that particular spot. Isn't it fair to infer from that that you were aware of the heightened risk around the pool, and you wanted to alert your passengers to take particular care at that location? Is that a reasonable inference a jury could draw, or would that be going too far? That would be going too far, Your Honor, based upon this record. There's no evidence that that was the reason it was placed there, and there are a myriad of explanations for why it was, and we have an actual explanation in this case, which it's just to have them there as an additional reminder to proceed with caution, not specific to any risk-creating condition, and that's what is not here in this case. We don't have evidence like we had in Frask in the form of a video. We don't have evidence like in Sorrell's in the form of like in Nathan in the form of a newsletter, where there's an acknowledgement as to why there is a warning, okay? In Guevara, another case cited by a plaintiff that this court heard, there was specific information contained within the sign to watch your step, so what the court found there is that you could reasonably infer that they were referring to the step. We don't have that there. We just have sign someplace on the deck, not at the spot where plaintiff is a fallen, and that's it. That scant record is not sufficient because you need more. Let me ask you a different question. Assume for the purposes of my question that the plaintiffs said enough with the cones to get to a jury on the question of actual or nature of a dangerous condition. That would not be a complete defense, would it? That would be simply a jury question going to comparative negligence and fault, or have I misapprehended that? I think that you perhaps have misapprehended that, Judge Marcus. The defendant under maritime law has a duty to warn of condition of risk-creating conditions that it knew or should have known about and which are not open and obvious to a reasonable person, and it's a reasonable person standard. There's two essential claims in this case. One is a duty to warn. The other is a failure to clean. However, there's no evidence whatsoever that would support a failure to clean theory of liability in this case. There's no evidence as to what cleaning procedures are, whether Carnival violated those cleaning procedures, who the cleaning crew member that was completely abandoned and not even really mentioned in the briefing in this case or at the judgment stage. There's no evidence that any liquid was on the floor for a sufficient time to invite any corrective action. The record is completely devoid of it. So open and obvious, if the court would find notice, which we don't believe there's sufficient evidence to assert notice in this case, open and obvious would be a complete bar to their failure to warn claim, and the result would be the open and obvious condition. What I would have thought, frankly, coming into this case is that you would have said basically some version of, like, come on, this is a pool deck. But as I read your brief, you don't really make the pool water argument. You make a spilled drink argument. And so what is it exactly that is open and obvious from your perspective? What's the risk? What was the cause of the puddle, I guess, that was open and obvious? Well, it's not the cause of the puddle, Your Honor. Well, I guess what I'm trying to say is there's this intuition that I have that on a pool deck, like, buyer beware. But that doesn't seem like the argument that you've made. Well, that's partly the argument that was made at the summary judgment stage. But I think it's not what necessarily caused it. It's whether it would have been observable through the ordinary use of reasonable person's senses. And what's the it in that sense? It would be the only condition they've alleged in this case, which is a puddle of water. And just so I understand to kind of round out the theory, even if it's not relevant sort of to the law, but your contention is that that puddle was a spilled drink puddle? No, we're not contending that. We're contending they don't actually know what it was. The plaintiff didn't know. And the only other witness in this case didn't know what it was. I think everybody tries to speculate that it was pool water, but the plaintiff was insistent in this case that she was nowhere near the pool at the time that this alleged incident happened. Regardless, anybody walking through that area and paying attention to where they're going through their ordinary use of their own senses would have seen it. The plaintiff in this case testified that nothing prevented her from seeing it on the deck. The witness, Ms. Chason, her niece, she testified that she was sitting approximately 10 feet away under a shaded cover in a chair. And she claims when somebody allegedly slipped a few minutes beforehand, she could clearly see the water on the deck. In fact, her testimony was it was obvious to her. Our contention is anyone walking on that deck, paying attention to where they're going through the ordinary use of their own senses, which are their eyes, would have been able to see and avoid the water on the deck. Okay, very well. Thank you so much, Mr. Silverman and Mr. Eaton. You've got four minutes remaining. We would just ask that the court affirm, please. Thank you very well. Thank you. Let me start with the risk-creating condition, which she attempted to distinguish in Carroll. The risk-creating condition in Carroll was the actions of passengers moving deck chairs. The risk-creating condition here is passengers getting out of the pool and dripping water all over the deck. It's not distinguishable. It's actions of passengers that they know is occurring and that they take corrective actions to prevent. In Carroll, it's making sure the chairs are pushed back. Here, it's putting out cones and perhaps cleaning the deck. Now, this suggestion, there's no scintilla. Can I stop you at that point if I could for a moment? Do I have it right, though, that your position factually is no cones were actually there? Your client says there were none and her friend Chasen says the same thing? No, Your Honor. I think the evidence is undisputed that there was a cone in the area. There's a photograph in the record that Mr. Vega was questioned about as attached to his deposition. And both the statements of Carnival in the incident report and in their interrogatory answer state that a cone was in place. The testimony of the plaintiff was that they did not see a cone. That doesn't establish that there wasn't one. It's that they did not see it. So that goes to the adequacy of the warning, whether it was sufficient. But I think the evidence... And if I have it right, then both the plaintiff and her friend say they did not see the cone. That's correct. Okay, thank you. Yes. Now, the suggestion that there's no scintillant evidence as to what type of liquid this was. Again, the interrogatory answers and the incident report, which is not hearsay, it's an admission of a party. They wrote it. It says that this is pool water. The alleged accident area was apparently wet due to the proximity of the pool and some passengers coming out of the pool with wet, soaking clothes. However, caution sign was in place. The incident report doesn't say, hey, there's a caution sign somewhere over here that has nothing to do with it. It links the caution sign directly to the pool water. And it doesn't even require a reasonable inference. It's undisputed that they're saying that the caution signs were in place to warn of this risk-creating condition. Same thing with the interrogatory answers. The area where plaintiff fell was expected to become wet due to passengers use of the swimming pool. We expect this. We know this risk-creating condition occurs. Although that condition is on the open Lido deck, are open and obvious to passengers, yellow caution cones were on place in the midship pool area. This is in the same sense. How could the yellow caution cones be linked to something else when we're talking about the condition that the plaintiff slipped on? You can't run away from these sworn testimony, these answers that the carnival gave. They gave them. That's the evidence in this case. And in their answer brief, they say specifically, evidence demonstrates that carnival was aware that the deck could become slippery when wet. That's the exact point in this case. They are aware of the risk-creating condition. They know it's slippery. That's why they put the caution signs there, as you noted, Judge Marcus. That's the only reason for it. There's no other evidence in this case that there's there for any other reason but to warn people of the wet pool deck. With respect to the open and obvious, I want to go back to this court's holding and plot. And again, this is important because the plot was water on the floor that ostensibly, if you're looking down, you should be able to see it. But in that case, the only evidence was, the only testimony was that neither of the parties saw it. It was colorless and odorless. They testified they did not see it on the floor until after they slipped and fell. And this court said, we cannot conclude as a matter of law that a reasonably prudent person through exercise of common sense and ordinary use of her senses would have clearly seen a colorless and odorless puddle on the floor. And what was also important to note in plot is that it's not just the appreciation of the water on the floor but the nature of the condition. A reasonable person would have observed the condition and appreciated the nature of the condition. And in Frasca, this court wrote, a reasonable jury can conclude that the degree of slipperiness on the deck was not open and obvious. So there are two steps to that. One is, you see the water. Two, can you appreciate that this is a slippery deck? Or would you think this is designed to not be slippery because it's a pool deck, which I think is where you were going, Judge Newsom. So I think I'm out of time unless there's any further questions. Okay, very well. Thank you both. Thank you so much. We will be in recess until tomorrow morning at 9 a.m.